Thank you, Your Honors. Welcome to Phoenix. Thank you for bringing some cooler weather with you. My name is Michael Bernays. I represent Mick Careaga. Mick was convicted of involuntary manslaughter on count one of an indictment here in the District of Arizona and of assault with a deadly weapon, also, excuse me, also acquitted of an underlying assault, which is an element of the assault with a deadly weapon. He was acquitted on the 924C gun count attendant to count one because the involuntary manslaughter doesn't support it, but he was convicted on count four. He received sentences of 70, I think it was 78 months concurrent on the two substantive charges and then a consecutive 84 months on the gun case. I would like to focus my time on count three, the inherently inconsistent verdict that was returned. And I don't, by doing so, mean to concede or abandon the argument about the lesser included in whether there was effective assistance of counsel in that regard. But I think the more pressing discussion will be had on the count three. So I'm wondering, counsel, if you would address whether under United States v. Powell and under the Ninth Circuit's Burgess decision, really we should affirm on count three provided there's sufficient evidence in the record to support it. I think we should not, Your Honor. I think you should not. And the reason is that those cases talk about inconsistent verdicts. And it's almost a matter of semantics. When we talk about inconsistent verdicts, when you look at all of these cases, Dunn, Powell, Hart, all the Ninth Circuit cases, they're talking about two different verdicts. They're talking about a defendant who was acquitted with his ---- You're right. They are talking about two. Why does that make a difference in principle? Because in this case, what happened was he was acquitted of an element of the charge and then convicted of the charge upon which he was also acquitted of an element. And you can't acquit somebody of an element of the charge and then convict them of the charge. The cases that you may be relying on, though, seem to be special verdict-type cases that are the result of a prende where you need to know drug quantity or other acts that affect the sentence. That's correct, Your Honor. And those cases treat them as elements of the offense when they're put to the jury as a special interrogatory. And one of those cases draws a distinction between a special verdict and a special interrogatory. But we all know what we're talking about here. I think it was the Second Circuit treated that very much as an element of the offense. And you can't have a conspiracy to distribute controlled substances without also determining which controlled substances were conspired about. All right. Would you go back to Powell, then, and explain just the principle of how we can have a decision like Powell and adopt a position like you are taking now? Well, Your Honor, footnote 8 of Powell discusses the fact that it does not necessarily cover every single situation. It acknowledges that there are situations in which two verdicts could be so inherently inconsistent one with the other. Yeah, but what footnote 8 is referring to is referring to inconsistent guilty verdicts. In other words, where the prosecutor submits alternative theories of the crime to the jury that are mutually inconsistent, and they pick them both. And you can't — that may be a different situation from Powell. Right, Your Honor. And I believe that our situation is even more compelling, because in our situation, it isn't two guilty verdicts. It's a not-guilty verdict. And that's where McArath comes in, in Foo Fong. In those cases, they say that when a jury acquits, we can't look beyond the verdict. He's been acquitted of the assault. There's nothing left to consider on the aggravated assault. And when you look at the verdict form itself, you can see, and that's at ER 123. It starts in the particular page, is ER 125, that both guilty and not guilty are written. They're in the same hand. They're done at the same time. This all happened about 20 minutes, 25 minutes after the jury was told, you do not need to fill in blanks that are unnecessary. And then they went in and filled in a blank that said he was not guilty of simple assault. And we can't get around that with reference to cases that don't address that specificity. And that's where Pierson, Randolph, and Shipley come in, because they all address that specific sort of anomaly where people are acquitted of what the courts are treating as elements to the offense, but then convicted of the greater offense. I wonder if Powell, though, doesn't answer what you're saying when it says the jury could have done something for any number of reasons, such as mistake or nullification or whatever. We don't inquire into that. Well, we don't inquire into that. That's absolutely right, Your Honor. But why, then, are we allowed to inquire more into the not guilty than the guilty? Perhaps the guilty was the mistake. And in our system of justice, remember, you know, I was looking at this in preparation for our argument, and I was thinking, we all went to school for 20 years or more. We all have years and years of experience in working with this. To be elevated to the bench, it takes a lot of work and a lot of wisdom and a lot of practice. And then we bring people in off the street and say, okay, you decide these questions. And that's the magic and the power of the American criminal justice system, is that we bring in people off the street, our peers, our fellow Americans, and we say to them, you get to be the judge, you get to look at this, and we're not going to disturb your verdict when you return it. So in the instant case — Isn't that the premise of our system of justice, that we take the people from the community to decide these issues, and the judges should not be second-guessing those verdicts unless it's absolutely clear that the verdict is not what the jury intended? Yes, that's correct, Your Honor. And I know that the government is going to want to argue that the verdict on Count 4 is an indication that the verdict on Count 3 should have been guilty, not been not guilty. But you can't do that. That's what McElrath says. My question is, how can we be certain that the jury intended to acquit on the simple assault? Unless, in my view, the way I read the case is, unless we can be sure of that, then the verdict has to stand. Well, Judge, I think we can be certain that they meant it because they wrote the words not guilty next to the line for simple assault. But that doesn't complete the issue because we have to look at the entire verdict, and they wrote guilty on the other one. So which one? I mean, I think if there's — to me, that takes away the certainty that they meant to acquit. But it should also undermine the certainty that they meant to convict. So if we want to argue that, well, we can look beyond that verdict and see that Count 4 — they wouldn't have done Count 4 under the jury instructions unless they meant a guilty on Count 3. By the same token, they wouldn't have filled in the blank on the simple assault on Count 3 unless they intended it. But that's not what our cases say that we do, that we just look to see whether there is an inconsistency. We have to look to see if those inconsistencies are irreconcilable. Well, Judge, I would urge you to take that look and find that being acquitted of an element of an offense is irreconcilable with being convicted of the same greater offense that includes that as an element. I see that my time is getting short. I would like to reserve time for rebuttal, but I'm happy to continue if the Court has further questions. It appears not, Counsel. We'll hear from you again on rebuttal. Thank you, ma'am. May it please the Court, my name is Peter Kozinets. I represent the United States. Defense Counsel has really focused his argument on the notion that if an element of a, if there's an inconsistent verdict that suggests that an element of a greater offense is found to the jury to be, you know, not established, that that means that the verdicts must be thrown out. And that is directly contrary to Powell and Dunn, Hart, and nearly a century of case law from this Court and the Supreme Court. The facts of Dunn and Powell illustrate exactly why. In both of those cases, the jury acquitted the defendant of kind of constituent offenses. In Dunn, offenses involving the possession or sale of liquor. In Powell, offenses involving drugs. But convicted the defendant of essentially greater offenses or compound offenses. In Dunn, it was maintaining a nuisance. This case would be just like Powell if they had said not guilty straight across the board on count three and guilty on count four. That would be Powell. And we'd uphold count four under Powell under the theory that, well, they got confused and there may have been lenity on count three. But here it's an internal finding within count three. Can you address his argument that that makes a difference?  Sure. So I think that really elevates form over substance. If you look at Powell, page 65, the Supreme Court uses the phrases lesser offense and predicate offense interchangeably in engaging in this kind of analysis. And it really focuses on the notion that if there is a crime that's deemed to be an element of a greater crime, that that alone is not sufficient grounds for throwing out the verdict. That you really have to look at whether the sufficiency of the evidence supports the guilty verdict. Here, there is no dispute on sufficiency. The defense has conceded that. So I think it elevates form over substance. And I think the district court judge issued a very thoughtful and thorough 25-page order, really analyzed Hart in great detail. And Hart's recitation of how any attempts to create exceptions from the Dunn-Powell rule have been rejected by the Supreme Court. And I think what if kind of the argument that defense counsel is suggesting here would be one that would create another exception or attempt to create an exception to Powell. But what if it's a lesser included offense? And I think that's just fundamentally inconsistent with the logic and the facts of Dunn and Powell. And I think... Counsel, do you believe there is a circuit split on this question as it stands now? No, because as I believe it was your honor pointed out, in these other cases, Randolph and Pierce and Shipley, what the courts were dealing with were these very fact-specific questions posed to the jury. Special factual interrogatories. What kind of drug was involved? What was the quantity of the drug? I think there's a world of difference between asking the jury to answer that sort of very factually, objectively verifiable type question versus issuing a general verdict on an offense, which is what they did here. Even though simple assault was characterized as a lesser included offense, it was a lesser included offense, it was still an offense. It was a fully formed offense. And the jury, in deciding the case here, did what we expect juries to do when they're given general verdict forms. What's striking about this case is that the jury sends out a note that said, do we have to fill in all these blanks? What if there's like a greater and a lesser? And the answer comes back, you don't have to fill in the blank if it's not relevant. And then they filled in the blank. So they seem to do, having gotten the instruction you don't need to do it, they then went ahead and did it. Do we give any weight to the fact that that was how they responded to the court's instruction? Well, I think there are two answers to that, Your Honor. One is that the case law says you don't try to second-guess the jury at all here. As long as there's sufficient evidence to support the guilty verdict, we don't want to speculate about what was really going through the jury's mind. But I think the district court judge here sort of went the extra mile and said, you know what? As a matter of common sense, there is an easy explanation for what happened. The jury was confused about whether every line on the verdict form had to be completed and submitted a question. The court, after consulting with both sides, crafted this response that maybe in retrospect wasn't super straightforward. If you don't need to fill it out, you don't have to fill it out. It was words to that effect. The jury came back and did fill out every line. I think that indicates that maybe they didn't fully understand the answer from the judge. And then we have their verdict on Count 4. After they had been specifically instructed, you can only find guilt on Count 4 if you find guilt on, you know, aggravated assault on Count 3. And so they found guilt on Count 4, and that reinforces the conclusion that they intended to find guilt on aggravated assault Count 3 as well. So I think there was sort of this common sense explanation that the district court judge put in his order. I think it makes sense. It's consistent with the record. But it's not even really necessary to go there because the case law says we're not going to look behind the jury's decision-making process. As long as there is sufficient evidence to support the guilty verdict, that verdict may stand. Do your honors have any other questions about that issue? It appears not. Do your honors have any questions about the second issue involving involuntary manslaughter? It appears not. Well, can you address their argument that that's within the scope of McCoy, that putting a lesser on the table is essentially signaling? The only strategy, the only reason for doing that is to invite the jury to go to that result, that it's essentially a sort of silent plea to the lesser and therefore falls within McCoy. Well, McCoy is, your honor, a very, very different case. McCoy clearly puts in front of the, you know, puts to the forefront the notion of is the client pleading guilty or not guilty. In McCoy, defense counsel got in front of the jury and said, my client's guilty. The client disagreed and vociferously did so, tried to fire his lawyer, objected to his counsel, objected to the court. That's nothing like what we have here. And I think this maybe goes to the distinction between pleading guilty and proffering a lesser-included offense. There are many, many differences. One is when you plead guilty, you waive all of your trial rights, but putting in a lesser-included instruction, you preserve all those rights. When you plead guilty, you confess guilt. When you put in a lesser-included instruction, you can argue innocence and seek an across-the-board acquittal. There's no bar on that. And when you plead guilty, you go through a very rigorous procedural process under Rule 11. You have to be in court in person, be put under oath, go through a series of questions with the judge to make sure your decision is knowing, voluntary, and intelligent. But under Rule 43B3 of the criminal procedure rules and this court's decision in the Sherman case, which we noted at page 37 of our brief, the defendant doesn't even need to be personally present at the jury charge conference. So if he doesn't even have to be there, the notion that he has to go through some sort of process similar to Rule 11 just isn't supported by the rules. And I think this court's decisions in Batchelor v. Risley and Crace v. Herzog are particularly instructive. They both recognize that putting in an instruction like this is a tactical decision that counsel makes. It's subjected to scrutiny under ineffective assistance of counsel principles. And it can be ineffective not to seek an instruction like this if your client's going to face a much harsher sentence. And really, that was the case here. Had the jury convicted Mr. Cariaga of murder or the 924J crime charged in Count II, he would have faced life in prison potentially. And counsel avoided that result. Under Crace, had he not done that, we could be here arguing that he committed ineffective assistance of counsel. So I think the bottom line is that these cases recognize this is really a sensitive decision that's made by trial counsel after assessing how the evidence has come in, assessing the law and the facts, maybe trying to get a sense for where the jury may be heading, and then making a judgment call in trial about the best path forward. And do Your Honors have any other questions about that? It appears not, counsel. Thank you. Thank you, Your Honor. Roboto. Let me very briefly address the McCoy issue, because I think what the government misses in that is, yes, the decision to seek a lesser included at trial needs to be a very thought out decision. It needs to assess the evidence, the jury, the read that you're getting off the courtroom, as it were. But it also needs to be done with the consultation of the defendant. And that's Mr. Cariaga's complaint here. Did he establish a sufficient factual basis that that happened with the motion that was submitted? Because it just seemed to be, I don't think there was a declaration. It just seemed to be attorney argument by a successor counsel. Your Honor, and that was me. And I admit that in hindsight, I probably should have asked for an evidentiary hearing on that point. No, but you should have just submitted a declaration and said, I had no idea he was going to do this. There was no factual basis for that assertion. I think that my assessment of that, as I prepared the post-trial pre-sentencing motions and the appeal, was that that record had been made in the in-camera hearing or in the sealed hearing, at which trial counsel was removed because of the dispute between the defendant and the trial counsel. Just very briefly, if I may, Your Honor, you've asked if there was a circuit split. I would say there is not a circuit split, because all the circuits that have addressed this have found that it's problematic. Shipley is in some ways a very interesting case, because then-Judge, now-Justice Gorsuch, recognized the problem, but he approved, because double jeopardy wasn't raised, the submission of that back to the jury. In the instant case, we didn't do that. And how it got missed, even our judge can't say. It's right there on the verdict form. He sees it. He passes it over to the clerk. The clerk reads only the guilty verdict. And if there had been an opportunity to approach, as they did moments earlier, when the jury had returned a verdict that had not addressed count two, then maybe we wouldn't be here today. But that didn't happen. It didn't get discovered until after I got appointed to take over for trial counsel. I ordered the transcripts and the record, because I hadn't done the trial. And I'm looking at the verdict forms. I see that, and I'm like, well, now there's an issue, you know. So I think there isn't a circuit split. All the circuits that have looked at it have said, no, you have to honor the not guilty of the lesser included, of the attendant quantities in the Shipley, Pierce, and Randolph cases. And as Fong Fu says, and as McIrate says, once rendered, a jury's verdict of acquittal is inviolate. And I think that's the difference here. That we have a verdict of acquittal on an element of the offense. And that really should be the end of it. Thank you, counsel. I was going to ask if the court had any further questions. I'd be happy to address them. It appears not, counsel. Thank you, counsel. Thank you to both counsel. Case just argued is submitted for decision by the court.
judges: RAWLINSON, COLLINS, Fitzwater